**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**FORT LAUDERDALE DIVISION**

NORTH POINTE CASUALTY
INSURANCE COMPANY,
a Michigan corporation,                           CASE NO.:

      Plaintiff,

vs.

ARTHUR L. ERB MASONRY, INC.,
a Florida Profit Corporation; EL-AD RESIDENCES
AT MIRAMAR CONDOMINIUM ASSOCIATION, INC.,
a Florida nonprofit corporation; EL-AD RESIDENCES
AT MIRAMAR LLC, a Delaware limited liability company;
CURRENT BUILDERS OF FLA., INC., a dissolved corporation;
THE RELATED GROUP OF FLORIDA, a Florida general
partnership, a/k/a and d/b/a THE RELATED GROUP a/k/a and
d/b/a THE RELATED GROUP OF FLORIDA, a/k/a and d/b/a
FORTUNE CONSTRUCTION; JMP CONTRACTORS, INC.,
d/b/a FORTUNE CONSTRUCTION COMPANY; RELATED
GENERAL OF FLORIDA, LLC d/b/a FORTUNE CONSTRUCTION
COMPANY; RELATED NY HOLDINGS LLC, d/b/a FORTUNE
CONSTRUCTION COMPANY; TRG HIATUS ROAD, LTD.,
a Florida limited partnership; and TRG HIATUS ROAD, INC.,
a Florida Profit Corporation; JMP CONTRACTORS, INC., a Florida
Profit Corporation; ATLANTIC ESCAYOLA STONE, INC., a Florida
Profit Corporation; EXCLUSIVE MILL WORK, INC., a Florida Profit
Corporation; PROFESSIONAL PLASTERING & DRYWALL, INC.,
a Florida Profit Corporation; SUNSHINE WINDOWS MANUFACTURING,
INC., a Florida Profit Corporation; C&C CONCRETE PUMPING,
INC., a Florida Profit Corporation; PROFESSIONAL PLASTERING
& STUCCO, INC., a Florida Profit Corporation; ROGER FRY &
ASSOCIATES ARCHITECTS, P.A., a Florida Profit Corporation;
ROGER FRY, Individually; BEST CONCRETE, INC. a Florida Profit
Corporation; and BEST CONCRETE PLACING & FINISHING, INC.,
a Florida Profit Corporation.

      Defendants.
_____/

## PLAINTIFF, NORTH POINTE CASUALTY INSURANCE COMPANY'S COMPLAINT FOR DECLARATORY JUDGMENT

COMES NOW, Plaintiff, NORTH POINTE CASUALTY INSURANCE COMPANY (NORTH POINTE) by and through its undersigned counsel and brings this action for declaratory judgment against Defendants ARTHUR L. ERB MASONRY, INC., a Florida Profit Corporation; EL-AD RESIDENCES AT MIRAMAR CONDOMINIUM ASSOCIATION, INC., a Florida nonprofit corporation; EL-AD RESIDENCES AT MIRAMAR LLC, a Delaware limited liability company; CURRENT BUILDERS OF FLA., INC., a dissolved corporation; THE RELATED GROUP OF FLORIDA, a Florida general partnership, a/k/a and d/b/a THE RELATED GROUP a/k/a and d/b/a THE RELATED GROUP OF FLORIDA, a/k/a and d/b/a FORTUNE CONSTRUCTION; JMP CONTRACTORS, INC., d/b/a FORTUNE CONSTRUCTION COMPANY; RELATED GENERAL OF FLORIDA, LLC d/b/a FORTUNE CONSTRUCTION COMPANY; RELATED NY HOLDINGS LLC, d/b/a FORTUNE CONSTRUCTION COMPANY ; TRG HIATUS ROAD, LTD., a Florida limited partnership; and TRG HIATUS ROAD, INC., a Florida Profit Corporation; JMP CONTRACTORS, INC., a Florida Profit Corporation; ATLANTIC ESCAYOLA STONE, INC., a Florida Profit Corporation; EXCLUSIVE MILL WORK, INC., a Florida Profit Corporation; PROFESSIONAL PLASTERING DRYWALL, INC., a Florida Profit Corporation; SUNSHINE WINDOWS MANUFACTURING, INC., a Florida Profit Corporation; C&C CONCRETE PUMPING, INC., a Florida Profit Corporation; PROFESSIONAL PLASTERING & STUCCO, INC., a Florida Profit Corporation; ROGER FRY & ASSOCIATES ARCHITECTS, P.A., a Florida Profit Corporation; ROGER FRY, Individually; BEST CONCRETE, INC. a Florida Profit Corporation; and BEST CONCRETE PLACING & FINISHING, INC., a Florida Profit Corporation.

## NATURE OF THE ACTION

1. This is an action for Declaratory Judgment to determine NORTH POINTE'S obligations under insurance policies issued to ARTHUR L. ERB MASONRY, INC. (ERB), as they relate to work performed by ERB at property (the Project) allegedly operated by EL-AD RESIDENCES AT MIRAMAR CONDOMINIUM ASSOCIATION, INC. (ASSOCIATION).

2. This action for Declaratory Judgment is brought pursuant to 28 U.S.C. § 2201 *et seq.*, for the purpose of determining a question in actual controversy between the parties as described in detail herein.

## JURISDICTION, VENUE AND PARTIES

3. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy, exclusive of interest and cost, is in excess of $75,000.00.

4. Venue for this matter exists under 28 U.S.C. § 1391(a), as all defendants reside in the district and a substantial part of the events or omissions giving rise to the claim occurred in this district.

5. Prior to 2010, NORTH POINTE was a Michigan corporation with its principal place of business in Southfield, Michigan. In 2010, NORTH POINTE was re-domesticated in Pennsylvania. At all material times hereto, NORTH POINTE was authorized under the laws of the state of Florida to conduct business as a foreign corporation issuing policies of insurance for delivery to policyholders within Florida.

6. At all material times hereto, Defendant ERB was and is a Florida for profit corporation that regularly conducts business in Broward County, Florida.

7. At all material times hereto, Defendant ASSOCIATION was and is a Florida non-profit corporation that regularly conducts business in Broward County. The ASSOCIATION is organized and existing as required by Chapter 718 of the Florida Statutes to govern and operate the EL-AD RESIDENCES AT MIRAMAR condominium community (the Project) located in Broward County, Florida.

8. At all times material hereto, Defendant EL-AD RESIDENCES AT MIRAMAR LLC (EL-AD) was and is a Delaware limited liability company with its principal place of business at 1301 international Parkway, Suite 200, Sunrise, Florida.

9. At all times material hereto, Defendant, CURRENT BUILDERS OF FLA., INC. (CURRENT) is a dissolved Florida Corporation with its principal place of business in Broward, Florida.

10. At all times material hereto, Defendant, THE RELATED GROUP OF FLORIDA, a Florida general partnership, a/k/a and d/b/a THE RELATED GROUP a/k/a and d/b/a THE RELATED GROUP OF FLORIDA, a/k/a and d/b/a FORTUNE CONSTRUCTION; JMP CONTRACTORS, INC., d/b/a FORTUNE CONSTRUCTION COMPANY (RELATED GROUP) was and is a Florida General Partnership with its principal place of business in Miami-Dade County, Florida.

11. At all times material hereto, Defendant, RELATED GENERAL OF FLORIDA, LLC d/b/a FORTUNE CONSTRUCTION COMPANY (RELATED GENERAL) was and is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

12. At all times material hereto, Defendant RELATED NY HOLDINGS LLC, d/b/a FORTUNE CONSTRUCTION COMPANY (RELATED HOLDINGS), was and is a Florida limited liability company with its principal place of business in Miami-Dade County, Florida.

13. At all times material hereto, Defendant TRG HIATUS ROAD, LTD., (TRG) was and is a Florida limited partnership, having its principal place of business in Miami-Dade County, Florida.

14. At all times material hereto, Defendant TRG HIATUS ROAD, INC., (TRG HIATUS) was and is a Florida Profit Corporation, with its principal place of business in Miami-Dade County, Florida.

15. At all times material hereto, Defendant JMP CONTRACTORS, INC., (JMP) was and is a Florida Profit Corporation, with its principal place of business in Miami-Dade County, Florida.

16. At all times material hereto, Defendant ATLANTIC ESCAYOLA STONE, INC., (ATLANTIC) was and is a Florida Profit Corporation, that regularly conducts business in Broward County, Florida.

17. At all times material hereto, Defendant EXCLUSIVE MILL WORK, INC., (EXCLUSIVE) was and is a Florida Profit Corporation, that regularly conducts business in Broward County, Florida.

18. At all times material hereto, Defendant PROFESSIONAL PLASTERING DRYWALL, INC., was and is a Florida Profit Corporation (PROFESSIONAL PLASTERING), that regularly conducts business in Broward County, Florida.

19. At all times material hereto, Defendant SUNSHINE WINDOWS MANUFACTURING, INC., (SUNSHINE) was and is a Florida Profit Corporation, that regularly conducts business in Broward County, Florida.

20. At all times material hereto, Defendant C&C CONCRETE PUMPING, INC., (C&C) was and is a Florida Profit Corporation, that regularly conducts business in Broward County, Florida.

21. At all times material hereto, Defendant PROFESSIONAL PLASTERING & STUCCO, INC., (PROFESSIONAL STUCCO) was and is a Florida Profit Corporation, that regularly conducts business in Broward County, Florida.

22. At all times material hereto, Defendant ROGER FRY & ASSOCIATES ARCHITECTS, P.A., (FRY & ASSOCIATES) was and is a Florida Profit Corporation, that regularly conducts business in Broward County, Florida.

23. At all times material hereto, Defendant ROGER FRY, (FRY) was and is an individual residing in the State of Florida and is principal of ROBERT FRY & ASSOCIATES.

24. At all times material hereto, Defendant BEST CONCRETE, INC., (BEST CONCRETE) was and is a Florida Profit Corporation, that regularly conducts business in Broward County, Florida.

25. At all times material hereto, Defendant BEST CONCRETE PLACING & FINISHING, INC., (BEST CONCRETE PLACING) was and is a Florida Profit Corporation, that regularly conducts business in Broward County, Florida.

26. Based on the above, there is complete diversity between the Plaintiff and Defendants. The amount in controversy, exclusive of interest or costs, exceeds the jurisdictional requirements for diversity jurisdiction.

27. Accordingly, there is original jurisdiction in this Court and Plaintiff respectfully requests this action proceed, pursuant to 28 U.S.C. Section 1332, *et. seq.*

## OPERATIVE FACTS

28. NORTH POINTE files this action for declaratory judgment with respect to the claim submitted by ERB for coverage, defense and/or indemnification of the claims raised in the Fourth Amended Complaint filed by the ASSOCIATION in the matter of *El-Ad Residences at Miramar Condominium Association, Inc. v. Arthur L. Erb Masonry, Inc., et. al.* in the Circuit

6

Court of the 17th Judicial Circuit in and for Broward County, Florida, Case No.: 09-4529 CACE 07, hereinafter (Underlying Action). *See* Fourth Amended Complaint from the Underlying Action attached hereto as Exhibit "A."

29. The named defendants in this action are also named parties in the Underlying Action.

30. The Fourth Amended Complaint in the Underlying Action (Exhibit "A"), has attached to it exhibits (approximating 1000 pages), which have not been attached to the instant Complaint due to the voluminous nature of the exhibits. However, upon information and belief, NORTH POINTE believes each of the named defendants in the instant action is in possession of the exhibits that were attached to the Fourth Amended Complaint.

31. In accordance with the allegations contained in the Fourth Amended Complaint, the ASSOCIATION has asserted causes of action against ERB and the other Defendants for defective and deficient work at the Project. Specifically, as to ERB, the ASSOCIATION has asserted causes of action for Negligence (Count XIX) and Violation of Building Code (Count XX) alleging that as a result of ERB's defective and deficient work at the Project, the ASSOCIATION and its members have suffered damages including, but not limited to, the cost to repair the defects and deficiencies in the construction of the Project.

32. ERB has sought coverage for the claims raised in the Underlying Action pursuant to contracts of insurance issued by NORTH POINTE to ERB, with policy periods of May 11, 2004 to May 11, 2007 (policy no. 3290000011), June 5, 2007 to June 5, 2008 (policy no. 3290000376) and June 5, 2008 to June 5, 2009 (policy no. 3094120664) (the Policies). *See* the Policies attached hereto as Exhibit "B."

33. The Project was designed by Defendant FRY & ASSOCIATES and was originally developed as apartments by Defendant EL-AD in 2002-2004.

34. The Project was scheduled to be completed in stages, with all the work to be completed nineteen (19) months following the notice of commencement.

35. Certificates of Occupancy for the Buildings were issued between July 16, 2004 and February 15, 2005.

36. Subsequently, the Project was converted to condominiums, with turnover occurring in late 2006.

37. On September 19, 2008, the ASSOCIATION filed a Notice of Claim, pursuant to Florida Statute Chapter 558, alleging a series of defects in the Project.

38. On May 12, 2011, the ASSOCIATION sent additional Notices of Claim against the Architect (FRY) and several subcontractors, including ERB. *See* Notice of Claim letter dated May 12, 2011 addressed to ERB attached hereto as Exhibit "C".

39. The Fourth Amended Complaint was filed on October 31, 2011.

40. In the Fourth Amended Complaint it is generally alleged:

> 47. As a result of the failures on part of each of the Defendants, as to their respective areas of work, responsibility and/or undertaking, the Association and its members have suffered and continue to suffer damages proximately caused by defects and deficiencies in the design and construction of the Subject Property, including but not limited to: violation of applicable building codes; architectural defects'; structural defects; fire-safety defects; waterproofing defects'; defects in civil drainage and landscaping defects; defects in the foundation systems; framing systems; plumbing, HVAC systems and cladding systems; defects in windows and sliding doors, exterior concrete flatwork, decks, walkways, floor assemblies, and drywall assemblies; and the material and workmanship incident to their installation. All of the Defendants' failures, when taken together, have collectively resulted in all of the damages suffered by the Plaintiff. (Exhibit "A").

41. As to ERB, it is alleged in Count XIX:

> 224. By negligently, carelessly, wrongfully and recklessly designing, constructing and inspecting the Subject Property in a defective and deficient manner as described herein above, Arthur L. Erb Masonry, Inc. breached the duty of care owed to the public and to the Association and its members, and violated the duty established by the building and construction codes and ordinances in force to protect the public and the Association and its members from injury caused by the defects and deficiencies. Arthur L. Erb Masonry, Inc. is responsible for the foregoing breaches and damages caused thereby.

42. Also, as to ERB, it is alleged in Count XX that as prime contractor on the Project, ERB violated the building codes applicable to the Project's construction and that ERB knew or should have known that all the alleged code violations existed as a result of the construction and development services ERB performed or failed to perform at the Project.

43. ERB was aware of the claims being asserted against it as early as May, 2011, when it was sent the Notice of Claim letter dated May 12, 2011.

44. Additionally, following service of the ASSOCIATION'S Third Amended Complaint, ERB filed a Letter/Answer with the Court on August 4, 2011.

45. Despite being aware of the claims and suit being asserted against, ERB did not advise NORTH POINTE of the claims being made, or of service of the ASSOCIATION'S complaint.

46. NORTH POINTE first became aware of the claims and suit against ERB fifteen (15) months later on November 20, 2012, when it was advised by ERB's insurance agent at the request of Zurich Insurance Company.

47. ERB has tendered the claims and suit alleged against it in the Underlying Action to NORTH POINTE, which has acknowledged receipt of the claims and suit and has agreed to participate in the defense of ERB under a reservation of rights.

## COUNT I – DECLARATORY JUDGMENT

NORTH POINTE incorporates by reference the allegations contained in paragraphs 1 through 47, as if more fully set forth herein at length.

48. The ASSOCIATION has alleged Negligence and Building Code Violations against ERB as a result of allegedly defective work performed by ERB, which has resulted in damages including, but not limited to, "the cost to repair the defects and deficiencies in the design and construction of the Subject Property." Exhibit "A", paragraph 227.

49. ERB is alleged to have "provided masonry materials, labor and services towards the project." Exhibit "A", paragraph 26. B).

50. NORTH POINTE asserts there is no coverage for any damages incurred by the ASSOCIATION for the "cost to repair the defects and deficiencies" of any of the materials supplied or work performed by ERB at the Project in accordance with the terms of the General Liability Insurance Policies issued to ERB.

51. The insuring agreements contained in the Policies, Exhibit "B", states:

**1.     Insuring Agreement**

**a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

*     *     *     *

**b.** This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

10

    **(2)** The "bodily injury" or "property damage" occurs during the policy period.

52. Further, the Policies define "occurrence" and "property damage" as follows:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

"Property damage" means:

**a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

53. Based upon the allegations set forth in the Underlying Action, the claims asserted against ERB in Count XX do not constitute an "occurrence", as that term is defined in the Policies and interpreted by Florida Law.

54. Based upon the allegations set forth in the Underlying Action, the claims asserted against ERB in Count XIX and Count XX for the cost to repair the defects and deficiencies in ERB's materials or its work do not arise from an "occurrence", or constitute "property damage", as those terms is defined in the Policies and interpreted by Florida Law.

55. Based upon the allegations set forth in the Underlying Action, any alleged "property damage", as that term is defined in the Policies and interpreted by Florida Law, which may have occurred prior to May 11, 2004, or after June 5, 2009, would not be covered under the Policies, since they would not have occurred during the NORTH POINTE policy periods.

56. The Policies also contain specific exclusions which are applicable to the allegations set forth in the Underlying Action and exclude coverage for the claims being asserted against ERB.

57. There is no coverage under the Policies in accordance with Exclusion **k. Damage To Your Product**, which states**:**

> **k.    Damage To Your Product**
>
> "Property damage" to "your product" arising out of it or any part of it.

58. "Your product" is defined in the Policies as:

> **a.** Means:
>
> **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
> **(a)** You;
>
> **(b)** Others trading under your name; or
>
> **(c)** A person or organization whose business or assets you have acquired; and
>
> **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
>
> **b.** Includes:
>
> **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
>
> **(2)** The providing of or failure to provide warnings or instructions.
>
> **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

59. Pursuant to the above exclusion, any claims or "property damage" to or arising from ERB's products, i.e. the masonry materials, are excluded from coverage.

60. Further, there is no coverage under the Policies in accordance with Exclusion **l. Damage To Your Work**, which states:

12

      **l.**    **Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor

61. "Your Work" is defined as:

**a.** Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

**b.** Includes

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work", and

(2) The providing of or failure to provide warnings or instructions.

62. Pursuant to the above exclusion, any claims or "property damage" to the work performed by ERB on the Project, are excluded from coverage.

63. There is no coverage under the Policies in accordance with Exclusion **m. Damage To Impaired Property Or Property Not Physically Injured**, which states:

      **m.**    **Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

13

> **(2)** A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.
>
> This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

64. "Impaired Property" is defined as:

> Tangible property, other than "your product" or "your work", that cannot be used or is less useful because:
>
> **a.** It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or
>
> **b.** You have failed to fulfill the terms of a contract or agreement;
>
> if such property can be restored to use by:
>
> **a.** The repair, replacement, adjustment or removal of "your product" or "your work"; or
>
> **b.** Your fulfilling the terms of the contract or agreement.

65. Pursuant to the above exclusion, any claim or "property damage" to "impaired property" arising from ERB's product or word, is excluded from coverage.

66. In accordance with Florida Law, *LaMarche v. Shelby Mutual Insurance Co.*, 390 So. 2d 325, 326 (Fla. 1980), the Policies do not cover the costs of repair and replacement of ERB's allegedly defective work.

67. Thus, any claims in Count XIX and/or Count XX for the repair and/or replacement of the work performed by ERB at the Project are excluded from coverage under the Policies.

68. There is no coverage under the Policies in accordance with the Fungi or Bacteria Exclusion (Form Nos. CG 21 67 04 02 and CG 21 67 12 04) which state:

**A.** The following exclusion is added to Paragraph **2. Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability**:

**2. Exclusions**

This insurance does not apply to:

**Fungi Or Bacteria**

a.  "Bodily injury" or "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, and "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently of in any sequence to such injury or damage.

b.  Any loss, cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in , a good or product intended for bodily consumption.

*     *     *     *

C. The following definition is added to the **Definitions** Section:

"Fungi" means any type or form of fungus, including mold, mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

69. Thus, to the extent there are claims in Underlying Action for "property damage" which would not have occurred, in whole or in part, but for the actual, alleged, or threatened, contact with, exposure to, existence of, or presence of, or the cost or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of "fungi" or bacteria, or to remove, "fungi" and/or bacteria are excluded from coverage under the Policies.

70. The Policies also contain the following notice provision:

### 2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

**a.** You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.** If a claim is made or "suit" is brought against any insured, you must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit' as soon as practicable.

**c.** You and any other involved insured must:

**(1)** Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

**(2)** Authorize us to obtain records and other information;

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

**(4)** Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

**d.** No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

71.    Despite being aware of the claims asserted against it, as well as the suit filed against it in the Underlying action in 2011, ERB never provided notice of either the claims or the suit to NORTH POINTE.

16

72. The failure of ERB to notify NORTH POINTE of the claims asserted against it, as well as the suit filed against it in the Underlying action, was not reasonable or justifiable.

73. Insomuch as ERB never notified NORTH POINTE of the claims asserted against it, as well as the suit filed against it in the Underlying action, there has been a breach of the above notice provisions of the Policies.

74. ERB'S failure to advise NORTH POINTE of the claims asserted against it, as well as the suit filed against it in the Underlying action, has prejudiced NORTH POINTE'S ability to investigate the claims as alleged in the Underlying Action.

75. The failure of ERB to notify NORTH POINTE of the claims asserted against it, as well as the suit filed against it in the Underlying action, has prejudiced NORTH POINTE'S ability to make a good faith and reasonable investigation of the claims and the potential defenses of ERB.

76. As a result of ERB'S breach of the above notice provision, NORTH POINTE has no obligation to defend or indemnify ERB for any liability and/or damages it may be assessed against it in the Underlying Action.

77. NORTH POINTE has a present *bona fide* need for a declaration with respect to its rights and obligations under the Policies as to its obligation to defend and potentially indemnify ERB in the Underlying Action.

78. The facts necessary for this Honorable Court to render NORTH POINTE'S Declaration of Rights is set forth in this Complaint or are ascertainable by this Court.

79. NORTH POINTE'S rights under the Policies and Florida law are dependent on this Honorable Court's findings of fact and/or application of applicable statutory and case law.

80.     The Defendants' interest in this Declaration of Rights are actual, present, adverse, and antagonistic in fact and/or in law to NORTH POINTE'S interest.

81.     NORTH POINTE seeks relief in order to determine and enforce contractual/legal rights under the Policies, not merely to seek legal advice from this Honorable Court.

WHEREFORE, NORTH POINTE CASUALTY INSURANCE COMPANY hereby respectfully requests this Court enter a judgment in its favor and against the Defendants:

a)   Declaring ERB has breached the notice provision of the Policies and therefore, NORTH POINTE has no duty to defend or indemnify ERB for any of the claims asserted against it in the Underlying Action;

b)   Declaring there is no coverage under the Policies for the cost to repair or replace ERB's product;

c)   Declaring there is no coverage under the Policies for the cost to repair or replace ERB's work;

d)   Declaring there is no coverage under the Policies for the claims asserted in Count XX – Violation of Building Code.

e)   Declaring there is no coverage under the Policies for any damages or costs associated with the presences or removal of "fungi" and/or bacteria.

f)   Declaring the Defendants are estopped from pursuing a claim, defense and/or indemnity against NORTH POINTE for any claims arising from the Underlying Action.

g)   Awarding attorneys' fees and costs for defending ERB in the underlying lawsuit.

NORTH POINTE CASUALTY INSURANCE COMPANY respectfully requests such further relief as this Court may deem appropriate, including but not limited to costs incurred in this action.

Respectfully submitted this 6th day of February, 2013.

           **MARSHALL, DENNEHEY, WARNER COLEMAN & GOGGIN**

By:   <u>/s/ Michael A. Packer</u>
      Michael A. Packer
      Florida Bar No. 121479
      mapacker@mdwcg.com
      100 NE 3rd Avenue, 11th Floor
      Fort Lauderdale, FL 33301
      Telephone: (954) 847-4921
      Facsimile: (954) 627-6640

      Attorneys for NORTH POINTE CASUALTY INSURANCE COMPANY